All right, and we will just be hearing argument from the appellant and from the appellant I'd like to begin with the issue that was really only raised during the course of the appellate briefing, which was the identification in the appellee's brief, Kharzinka's brief, that a photograph had been disclosed in Discovery was actually representative of the model that was involved in the accident in this case. I don't know whether that counsel is going to clarify following, so I'd like to address that really in my minutes I've reserved to move on to the rest of the argument, but I do want to impress upon the court that if there was a question at all, if there remains a question as to what machine was actually at issue and what the design was that was involved here, then it would be obviously relevant and the record upon which the lower court's decision was made would not have been complete. I was looking at this this morning and you have the photos in your reply brief and I think in one of the red briefs there's a little confusion as to the photograph of the grinder. Correct. But the record doesn't appear to have a photograph of the actual meat grinder that was involved in the accident. Is that true? It's not a complete picture because it was partially Exactly. So the headstocks, the operating parts, the auger were all removed during the course of the emergency response. There is an instruction manual. Correct. On the front of the instruction manual there are a couple of photographs and one of them is the model, the same model as the grinder involved in the accident. Is that true? The manual that was disclosed is the manual that the defendant and the third party defendant have identified as all throughout the discovery process as being the machine that was involved in the accident. Is there any doubt that it's the right one? Only to the extent that Karzynka raised it by saying, look, here's a photograph, which is clearly a different model if you compare the two, because the model that's in Karzynka's brief has a differently shaped handle, has different stickers, warning stickers. And so the question is, if there was a different model involved and they failed to identify it properly, then that would obviously throw out the entire basis of the summary judgment motion. But I would like to reserve further discussion of that if I could to find out what position Karzynka is taking at this point. With respect to the design itself of the grinder, the New York State Court of Appeals made clear in Hoover v. New Holland that the substantial modification defense, which is what the appellees relied upon in moving for summary judgment, is not applicable until a manufacturer first makes a showing that the product was safely designed, and then only then can they show that the accident wouldn't have happened but for the removal of a safety device. And in this case, not only did the appellees fail to meet their burden, but they didn't even address the issue of whether or not the machine was safely designed. They only addressed the issue of whether or not the safety guard was a permanent fixture. But there was no design studies. Did the experts, though, confirm that if the safety guard had been on, that this incident wouldn't have happened? And has your expert confirmed that as well? Our expert testified that small hands could get through, essentially, this. But there was no foundation for that testimony, even on the part of our expert. He's disavowing your expert's testimony? Only to the extent that we concede he didn't study that. He didn't study whether or not, generally, users' hands could or could not be pulled through there. I would also point out that this accident didn't happen as a result of our client sticking his hand deliberately into the headstock and into the auger. His hand was pulled in as a result of clothing that was caught. And so there was no complete testimony with respect to our expert as to whether or not, well, is it possible that his sleeve had gotten caught, and the force of the grinder could have actually pulled someone with even medium- to larger-sized hands down in there. He wasn't asked that question, and he didn't respond to it. And I think more importantly is that testimony, you know, that was not something that was submitted as part of their Rule 56 statements that we could have responded to timely. That was only following multiple rounds of briefing with did they submit our expert's deposition. And that's their only fact in support of the fact that their product couldn't have had this accident occur. Have you had an opportunity to present more evidence to rebut your expert's testimony? It's not even a matter of evidence. They didn't allege any facts that would support that this was safe as designed. They didn't even, in a conclusory fashion in their initial summary judgment papers, say this guard would not prevent this accident from happening or would have prevented this accident from happening but for its removal. They only said the guard is permanent. It was designed not to be removed. They didn't address, they didn't go into the design of the guard. They didn't compare it to other guards in the marketplace. They didn't conduct any studies. They didn't really delve into measurements at all, and they didn't have an expert in support of their summary judgment motions originally. It was only after plaintiff submitted a position. Why does it matter, the sequencing? Because in the end, the record is what it is. Well, it wouldn't have mattered necessarily if they had supplemented their, say, Rule 56 statements with a complete addressing of this point. But again, what they didn't do is, at the end of all the briefing, they didn't produce a complete record of why their product was safe. It was only pointing to this point line. Didn't their experts say that the meat grinder was properly designed and manufactured and was reasonably safe and suitable for its intended purpose and use? Correct, but I think it's- I don't hear the obligation on the plaintiff to show otherwise or to come forward with evidence otherwise. Because the case law is clear that the mere adherence to a standard, and in this case their expert pointed to really a voluminous standard that applies generally to material, or excuse me, machinery in general. It wasn't specifically a standard applying to grinders and this type of grinder in particular. But the point is, even adherence to industry standard is not dispositive on the issue of whether or not it was safely designed. And to- Was it your principal argument below that the design was unsafe because the safety guard could be removed? It was a- One of our arguments was that it was foreseeable that there would be attempts, and that the mere fact that it took some effort to remove it is not, again, dispositive at the summary judgment stage. It took a lot of effort. Didn't they have to use some kind of a grinder to- You know, I think if you're talking about some sort of kitchen, home kitchen product, maybe you'd think that was a lot of effort. I think if you're talking about a commercial or industrial setting where people are using tools and using or expected to produce a large volume of food products, I don't think that a few minutes of grinding with a power tool is actually that much effort. What I was- Unlike Liriana v. Hobart, where there was a fair amount of indication that Hobart was aware of the fact that there would be modifications of the guard, I didn't see anything from the discovery other than that instance where there was a trade show, where there was an attempt to remove the guard. But was there any kind of examination of records of the company and or its officers with regard to their notice of other regular attempts at removing the guard? There is not. I will concede there is not a large amount of factual material. Because it takes this away from the Liriana kind of context. What I would say- And you don't make a Liriana-type claim. No. And I think, to be candid, if we were at trial, I would want more evidence along those lines. But this is a summary judgment stage, and they raised- I'm pointing to a car sink, I apologize- Procraft raised that their witness testified to their knowledge of that this was something that would be shown at a trade show, which indicates that this is something the industry recognized was a problem and that people would attempt to remove it. And so, even if, hypothetically, a jury were to determine, you know what, we don't fully believe that they designed this, or they failed to include, say, an interlock because they knew that it would depress sales, hypothetically, that's still a question for a jury. Fair enough. Thank you. Yeah, you have some rebuttal time. Okay. And, Mr. Regan, you are here for a car sink, correct? I am. Good morning, Your Honors. I thought I was going to be after counsel for Procraft, but apparently they had something better to do, so I'll step into the breach and do what I can. I guess I'll start out by saying that Plaintiff's argument, or his reference to the photograph at the beginning of my brief, is really much ado about nothing. The fact of the matter is, looking back, I do realize that I did say that it was a photograph of the actual model. And, again, this was just in a preliminary statement. In fact, it wasn't. And that photograph, there is a photograph of that grinder in the record. It's Defendant's Exhibit A. It's a laser color photograph of one of the photographs that's currently in Carzinka. There is an actual photograph in the record as Defendant's Exhibit A. Now, counsel's talking about these differences. The difference is that in the photograph that he referred to, the headstock is still on the machine. And as counsel knows, the testimony is, for all intents and purposes, they're identical. Just the photograph marked as Exhibit A, again, in the record, Appendix 130, 131, 138, had the headstock removed. This is all, this is just smoke and mirrors. None of this, none of counsel's arguments have any relevance to the facts of this case. So, unless the court has any further questions, I'm going to move on to what I think are perhaps the more substantive issues in this matter. Now, counsel keeps talking about our failure to establish our primary case. This court has spoken very clearly on this issue, and I'm going to quote, because they say it better than I will. In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the moving's burden will be satisfied if it can point to an absence of evidence to support an essential element of a non-moving party's claim. And again, if you'll bear with me, again, because I think this addresses it. One more direct quote, and this comes from the Robinson case. It says, the manufacture of a purportedly defective product demonstrates prima facie its entitlement to summary judgment by establishing that after the product left the possession and control of the manufacturer, there was a subsequent modification which substantially altered the product and was the proximate cause of the plaintiff's injuries. Your Honor, Judge Gonzales, his opinion is extremely thorough. It's well-reasoned. It's direct, and it's dispositive. I think it's an excellent opinion. I think that he addressed all these issues very clearly. And he came to the correct conclusion. The fact of the matter is there was a substantial modification to this meat grinder, and that modification was the proximate cause. And I don't think that anybody can doubt that. Now, there's nothing really particularly special about this case. The injuries are horrible. I understand that. But this isn't the first meat grinder case to come before this court. There have been a number of them. There's been a Liriano. And in the appellate division of the second department, there's Hernandez. There's Mercedes. There's Darson. In this court, there's the Barashvili v. Hobart case. All of these cases, all the fact patterns are almost identically on point. They all involve individuals frequently who work, and at least two or three of the cases, individuals who, ironically enough, were recent immigrants working on Brighton Beach, just where Counsel's client was working, where there was a safety guard on almost the exact same machine, and they took it off, and the guy's hand got pulled in or his fingers or whatnot, and he lost it. And, yes, it's very sad, but that doesn't mean there was anything wrong with the product. Now, Counsel talks about, you know, the fact that maybe this was intentionally designed or purposely manufactured for the removal. And I'll just refer the court to the case of Hernandez's v. Bureau. Excuse me. Getting my cases mixed up. If you'll bear with me, I'm a little bit nervous. This court is awfully august. I'm usually arguing before the second department. I don't hold them in dearly. I won't tell them that you referred to them as less talk. I suspect out on Madison Avenue they wouldn't agree. Well, that's okay. The first department would definitely not agree. Okay. I'm sorry. I referred to the wrong case. It's the case of Darson v. Goncolito, which is a second department decision, and I'm just going to quote the relevant portions. Again, this is another one of these, one of the mill, and I hate to say that because it makes it sound trite, but it's not. This is another one of those cases in which there was a meat grinder, and the grinder was taken off, and the hand went in it, and the injuries were horrible. And the court says, in view of the design of the grinder, specifically that the safety guard was affixed to the machine with three fairly heavy rivets, which would have to be removed forcibly, it is manifest that the product was not purposely manufactured to permit its use without a safety guard. That's it, Your Honors. The fact of the matter is that the trade show, I forget the gentleman's name, but you all know who I'm talking about. He tried, you know, to show off after probably having a few drinks, said, give me a hammer, I'll get that thing off. He couldn't do it. Plaintiff's own father tried to bang it with a hammer. He couldn't do it. He had to bring out a grinder. I think we all know that this machine was not designed to be used without the safety guard. And really, Judge Gonzales said it correctly in his decision. And again, we're all discombobulated here. And he said, summary judgment therefore hinges on whether a plaintiff has successfully established the existence of a tribal issue of material fact concerning whether or not injuries would have arisen, but for the post-sale modification of the safety feature on an otherwise safe product. That's directly from the Hoover case. That's the issue. Would these injuries have happened but for the removal? And we all know that they wouldn't. Now, counsel says that, well, we didn't establish. Again, this is making much ado about nothing. The photographs from the record, we can all see his expert conceded it's a very small hole. You can see from the auger that he used to push the meat in. It's very small. Is it conceivable that he could have gotten his finger caught? Yeah, it is. And that's why he used the auger. But the mere fact that that accident could have happened, that doesn't raise a question of fact as to whether the product was effectively designed. There's just simply nothing here. Thank you, Your Honor. Thank you. Yes, okay, hang on just one second. Okay. So you were here on behalf of ProCraft? That is correct. My apologies to the court and counsel. I had car issues this morning. I listened to plaintiff's argument on my phone in an Uber on the way over here. And your name is? Peter Ureta. All right. Okay, Mr. Ureta, we will hear from you. Okay. I will not require the entire eight minutes. With respect to the plaintiff's position regarding the briefing of the motions, the procedural posture was somewhat unusual in that we were told to make the motion even though we hadn't done any expert discovery, and we did so. And then Judge Gonzalez came on the case, and he changed the parameters of the briefing schedule, and we were both allowed to present expert testimony, and, in fact, it was expert discovery, and we were allowed further briefing. So any objections to that I think are unfounded since those issues were addressed in the further briefing, and further memorandums that were presented to the court. I'm sure my colleague from Karzinka has reiterated the arguments about how it's the defendant's position that this grinder was safe as designed. It had a non-removable guard that could not be screwed apart, could not be taken apart. In order to accomplish the destruction of the guard, they had to try various things, including hammering it and eventually sawing it off. So we submit that the guard and the grinder were safe, and the efforts made by the Karzinka employees to remove the guard were the result of the accident. The warnings displayed were clear. The plaintiff admitted that he appreciated the risk in the pictograms, even though he did not speak English. He appreciated the pictograms. The plaintiff's own experts said that the warnings served to identify the risk, identify how to avoid the risk, and identify the consequences of using the machine improperly. So I won't take up any more time, and I submit that the court below reached its proper decision on the motion. Thank you. And again, apologies to the court and counsel. Thank you, Your Honors. Just to respond to what counsel just stated with respect to the briefing schedule, I don't want to belabor this point, but the lower court gave the third party defendants the option. They didn't direct the parties to move for summary judgment before expert discovery was complete. They gave them the option. They said, we're going to give you a briefing schedule. Were you prejudiced in any way? Because in the end, there was full briefing, there was expert discovery, and so things went out of order a little bit. Was there any prejudice to your side? No. In terms of prejudice, no, because ultimately our position is they did not meet their burden of proof, and they didn't make a prima facie showing with respect to the fact the product was safe. So no, we were not burdened. I mean, I'm sorry. We're not prejudiced to that. However, I want to illustrate, I'm only raising this issue to illustrate that the reason that they chose to brief it before expert discovery was complete was because counsel had a misunderstanding about the law and believed that the substantial modification defense was an absolute defense, and they didn't have to show that the product was safe as long as they could show that the guard was removed. So they came. They made their motion. The motion said, here's the guard. It was designed to be permanent. It was removed. Therefore, no liability to us. That was their argument. And then only then, when plaintiff pointed out, hey, wait a second, you never showed that your product was safe in the first place, did they then at the end of the game try and say, well, look, even your expert says that plaintiff's hand couldn't have gotten caught. Again, there's no comparison to other cases. Counsel for Karzynka just represented that in these other cases that have come before the court and lower courts where there have also been meat grinders, that it's basically the same thing. If you make a grinder that has a guard on it, it's a grinder with a guard on it. But that's obviously not the case. These are all fact-specific cases. And just because one manufacturer manufactured a product that has a guard doesn't mean that their product was safe with the guard installed. What is it about the guard, the presence of the guard that doesn't abrogate or for which the machine is still unsafe in your complaint? How did you state that claim that notwithstanding, that even if the guard hadn't been removed, the machine was unsafe? Well, two things. We still... It would be a claim that you would have to make independently, right? We would only have to make the claim to the extent at the time of trial. Yes, I agree with you. Wait a second. The defendant's pleading was substantial modification, correct? As an affirmative defense, correct. Our answer to that is it doesn't matter because it was unsafe. Our answer to that is, well, you first have to show that it was safe as designed. And our expert listed multiple reasons, three primary ones, why the device was not safe as designed. One of them was the lack of an interlock. The interlock presumes removal of the guard. So the interlock's tied to a theory of modification. Correct. What else? Okay. The failure to provide adequate warnings and the failure to both place... Warnings as to removal of the guard. Warnings to everything in this case. There should have been adequate warnings as to you're not supposed to use this machine without the guard in place, number one. There should be an adequate warning as to you shouldn't be using the machine without using the plunger that was sold with the machine. There should be an adequate warning with respect to how severe the injury is. Our expert specifically said the types of warnings that were given were cautionary and not specific with respect to the adequacy of the danger. Warning versus danger. And the case law is clear that the warning has to be commensurate with the danger that's presented. Can I just ask you on the warning question? Sure. I don't know if you're referring now specifically to the warnings on the machine itself or in the manual, but my follow-up to that is with regard to the warning on the machine itself. Mr. Kusinov does not speak, does not read English. Correct. And so the warnings on the machine were not in... I'm sorry, I don't know what language he does read. Uzbekistani or Uzbek. So this description of the fact that the machine uses words like warning or danger or what have you, I don't understand how that is going to – how that would have prevented that. Okay. Quickly, the law is clear that the warnings do not have to be specific to the user. The warnings can be inadequate if they fail to adequately warn the employer and the employer's other butchers who are training him. Maybe the guard's never removed if they had been warned adequately. Maybe they make sure that he's using a pusher instead of using his hands if they have removed the guard if they had all been warned adequately. Those are – we could spend half an hour discussing all the different types of factors that might go into whether or not he was adequately warned. In this case, the warnings were not clearly visible. They were on the side of the machine where a user is not going to immediately see them should they have been placed in a more visible place. Again, I didn't even have a chance to touch on the emergency stop button that was on the side and was blocked by the handle or the knob that was in place. And so it resulted in the machine not being turned off for a range of 15 seconds after this happened. And so was it safe even if – even if this could have – but for the removal of the guard, even if that wouldn't have happened, they knew people might try and remove this guard. And even if there would generally be not liable for that, the failure to put an emergency stop button, knowing that this is the kind of thing that could happen, and to not only not put like an industry standard emergency stop button, but not even put a stop button that's easily within the user's view and easily reachable and not obstructed by the knobs. The first issue is if the guard's efficient, that's the end of it, whether there's inadequate warning or otherwise. Well, let me – can I pose a hypothetical to you? Sure, go ahead. Let's say there is a reasonably designed safety device, such as a guard. I think we can all agree that we're not even claiming the safety device has to be impossible to be bypassed. So let's say, hypothetically, a jury decides that they actually took reasonable precautions in installing this guard and it's strong enough and it really does take a lot of work to remove it. But you know what? They still know some people are going to remove it anyway, and this is a risk. That's where I stop you, because this is not a Liriano case. I mean, other than the assertion – you do not have an assertion that the manufacturer was generally aware, other than the trade show issue. Now, that may – you may try and use that to debt that, but this is different from Liriano, where Hobart was specifically on notice from a number of incidences where people were regularly removing the guard. Now, that's different from getting your hand in there with the guard on, isn't it? It's – I'm not – Your expert says that he wouldn't have got his hand caught if the guard had been in place. I don't feel like there's a full record with respect to – I understand what you're saying, but I – Yes, and I agree. That's probably – Let me characterize what your expert said. Have I? No, you have not. Let me give you a hypothetical. Sure. If the plaintiff's expert says this accident would not have occurred if the safety guard had been in place, do you think that the plaintiff's got a cause of action? If – I'm sorry, can you repeat that? I apologize. If a plaintiff's expert says this accident would not have occurred if the safety guard had been in place, does the plaintiff have a cause of action? We would say yes. Under Robinson? Under the argument, again, that a safety device that even is reasonable could be bypassed, and therefore these other warnings and interlock devices and the emergency stop button should still be factored. These are questions of fact with respect to was the design reasonable. These are all things. Thank you, John. All right. Thank you. Thank you. Thank you. Thank you very much. Can I just – No. A lot of things. I apologize. I just – I wasn't aware that counsel was going to take his two minutes to come up and argue ten minutes on theories that he didn't bring up in his original presentation, and I just feel that we've been somewhat prejudiced. I didn't discuss failure to warn because counsel didn't bring that up, but now I feel – That happens on a regular basis. That does happen, but we understand we have all the briefing and will respond to it. All right. Thank you, all of you. They wouldn't let you talk at the second department, either. They probably wouldn't let me get away with that. No, I know that. I know that for a fact. All right. Thank you, Mr. Reardon. Thank you again. Take care. Safe journey, gentlemen. Thank you very much.